# 23-60106

## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

**CANDACE E. TAYLOR,**

**Plaintiff-Appellant**

**v.**

**DENIS McDONOUGH,**
**SECRETARY, U.S.**
**DEPARTMENT OF VETERAN AFFAIRS,**

**Defendant-Appellee**

FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION
1:21-CV-00294-HSO-BWR

## Brief of Appellee

DARREN J. LaMARCA
*United States Attorney*
*Southern District of Mississippi*

GREGG MAYER
Mississippi Bar Number 102232
*Assistant United States Attorney*
501 E. Court St. Suite 4.430
Jackson, MS 39201

**Case No. 23-60106**

**CERTIFICATE OF INTERESTED PERSONS**

The undersigned counsel of record certifies that the following listed

persons and entities, as described in Fifth Circuit Rule 28.2.1, have an

interest in the outcome of this case.  These representations are made in

order that the judges of this Court may evaluate possible disqualifications

or recusal:

1)      Candace E. Taylor, Plaintiff-Appellant;

2)      Denis McDonough, Secretary of the U.S. Department of Veteran
        Affairs, Defendant-Appellee

3)      Gregg Mayer, Assistant United States Attorney, Southern
        District of Mississippi; Counsel for Defendant-Appellee;

4)      Linda K. Garner, Counsel for Plaintiff-Appellant

5)      Shantrell H. Nicks, Counsel for Plaintiff-Appellant

6)      Honorable Sul Ozerden, United States District Judge, Southern
        District of Mississippi;

7)      Honorable Bradley W. Rath, United States Magistrate Judge,
        Southern District of Mississippi.

/s/ Gregg Mayer
**GREGG MAYER**
*Assistant United States Attorney*

ii

## STATEMENT REGARDING ORAL ARGUMENT

Defendant-Appellee Denis McDonough, Secretary of the U.S. Department of Veteran Affairs (hereinafter "VA") does not request oral argument.  The VA respectfully submits that the judgment may be affirmed on the record and briefs alone. *See* Fed. R. App. P. 34(a)(2); Fifth Cir. R. 28.2.3.

# TABLE OF CONTENTS

PAGE

STATEMENT REGARDING ORAL ARGUMENT............................................ iii

TABLE OF AUTHORITIES................................................................................ v

STATEMENT OF JURISDICTION ..................................................................1

STATEMENT OF THE ISSUES ........................................................................1

STATEMENT OF THE CASE............................................................................2

    A.    Procedural History and Nature of the Case ...................................2

    B.    Relevant Facts....................................................................................3

            1.    Taylor's allegations of sexual harassment
                from April to August 2017......................................................4

            2.    Taylor's allegations in September 2017 ...............................5

            3.    Taylor first reports sexual harassment in October 2017
                and is promptly moved away from alleged harasser.........6

SUMMARY OF THE ARGUMENT....................................................................8

ARGUMENT.......................................................................................................9

    The District Court Properly Granted Summary Judgment...................9

    A.    Standard of Review .........................................................................9

B.   Discussion ..........................................................................10

1.  Taylor's claims from April to August 2017 are time-barred......10

2.  The District Court correctly determined Taylor did not suffer a tangible employment action and, as a result, analyzed her claim as one of hostile work environment .............................................14

    a. Taylor requested transfer to MAS, and the transfer was approved by another supervisor, not the alleged harasser ...............................................................................17

    b.  Taylor offers only conclusory assertions she transferred from a position that was "objectively superior" ...........................................................................19

    c.  Alleged threats with no action do not create a tangible employment action...........................................19

3.  The VA had reasonable safeguards in place and Taylor was moved away from alleged harasser as soon as she reported claims.............................................................................................20

    a. The VA took reasonable care to follow its anti-harassment policies .......................................................21

    b. Taylor unreasonably failed to take advantage of the corrective measures available at the VA to prevent harassment...................................................................23

CONCLUSION ...................................................................................25

CERTIFICATE OF SERVICE ............................................................27

CERTIFICATE OF COMPLIANCE ...................................................................28

# TABLE OF AUTHORITIES

**Cases**                                                                   PAGE

*Alaniz v. Zamora-Quezada*, 591 F.3d 761 (5th Cir. 2009).....................................19

*Baker v. McHugh*, 672 F. App'x 357 (5th Cir. 2016) ...........................................12

*Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998).................................*passim*

*Casiano v. AT&T Corp.*, 213 F.3d 278 (5th Cir. 2000).................................15, 17

*Davenport v. Edward D. Jones & Co., L.P.*, 891 F.3d 162 (5th Cir. 2018)...........16

*Doe v. Edgewood Ind. School Dist.*, 964 F.3d 351 (5th Cir. 2020).........................9

*Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)....................................*passim*

*Frazer v. Angelina Coll.*, 67 F. App'x 251 (5th Cir. 2003) .................................22

*Green v. Brennan*, 578 U.S. 547 (2016)……………...…………….. .................12

*Harper v. Jackson Mun. Sch. Dist.*, 149 F. App'x 295 (5th Cir. 2005) ..........16, 24

*Indest v. Freeman Decorating, Inc.*, 164 F.3d 258 (5th Cir. 1999) ......................23

*Massingill v. Nicholson*, 496 F.3d 382 (5th Cir. 2007) .........................................12

*Oliver v. Scott*, 276 F.3d 736 (5th Cir. 2002) ....................................................10, 19

*Pacheco v. Rice*, 966 F.2d 904 (5th Cir. 1992) ......................................................12

*Reveles v. Napolitano*, 595 F. App'x 321 (5th Cir. 2014) .....................................13

*Ross v. Wald Moving and Storage Servs.*, 193 F.3d 516 (5th Cir. 1999) .............20

*Rowe v. Sullivan*, 967 F.2d 186 (5th Cir. 1992) .....................................................13

*Werner v. Dep't of Homeland Sec.*, 441 F. App'x 246 (5th Cir. 2011).................13

## Statutes & Rules

42 U.S.C. § 2000e, *et. seq* ..........................................................................................2

29 C.F.R. § 1614.105 ........................................................................................11, 13

Fed. R. Civ. P. 56.........................................................................................................9

# STATEMENT OF JURISDICTION

The district court case was filed in September 2021, and ended when

the court dismissed all of Plaintiff-Appellant Candace Taylor's claims and

entered final judgment on February 3, 2023. ROA.596. Taylor timely filed

her notice of appeal on March 3, 2023. ROA.612.

This Court has jurisdiction over the appeal under 28 U.S.C. § 1291.

# STATEMENT OF THE ISSUES

1.    Whether the district court correctly determined that Taylor's

allegations of sexual harassment from April to August 2017 are time-barred

because she did not report these claims within 45 days of the alleged

incidents?

2.    Whether the district court correctly determined that Taylor did

not suffer a tangible employment action when she requested to be

transferred to a different position, a supervisor other than the alleged

harasser authorized the transfer, Taylor did not incur any pay decrease,

demotion, loss of benefits, or discipline, and Taylor subsequently applied

to work in the new position permanently?

3.      Whether the district court correctly determined Taylor

unreasonably failed to take advantage of the safeguards in place to prevent

sexual harassment when she waited more than six months before reporting

her claims, and, once she did report the alleged harassment, she was

moved away from the alleged harasser the next day and did not see him

again?

## STATEMENT OF THE CASE

**Procedural History and Nature of the Case.**    In September 2021,

Taylor filed her Amended Complaint against the VA alleging sexual

harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§ 2000e, *et. seq.* ROA.28.  The district court entered its Memorandum

Opinion and Order and a Final Judgment in favor of the VA. ROA.596.

Taylor timely filed a notice of appeal. ROA.612.

On appeal, Taylor challenges the district court's determination that

she did not suffer a tangible employment action and that most of her

claims are time-barred. Taylor also challenges the district court's

determination that her six-month delay before reporting the allegations

established that she failed to take advantage of the anti-harassment measures available at the VA, measures that Taylor not only knew how to follow but that she also provided regular training to other employees about how to report claims of harassment.

**Relevant Facts**.   In 2013, Taylor started working at the Department of Veterans Affairs ("VA") office on the Gulf Coast as a Medical Administrative Support ("MAS") Assistant. ROA.172-73. From 2013 to 2017, Taylor met and occasionally worked with William Hardy, who worked in the Equal Employment Office ("EEO") at the VA. ROA.175-78. As the District Court noted, Taylor maintains that during this time Hardy was "very respectful…very engaging with everybody" and was at all times "professional." ROA.179.

In March 2017, Taylor started a new role as the EEO Program Assistant. ROA.180-81. In this role, she reported directly to Hardy. ROA.575. As detailed in the district court opinion, ROA.575-76, Taylor alleges Hardy began sexually harassing her shortly after she started as EEO assistant. These allegations of harassment can be divided into two phases:

3

(1) alleged harassment from April 2017 to August 2017, and (2) alleged

harassing text messages in September 2017.

### 1.     Taylor's allegations of sexual harassment from April to August 2017

Taylor testified that in April 2017, Hardy told her that he was

sexually frustrated at home and commented on her physique. ROA.191-94.

Taylor also testified that she did not report this interaction because she was

worried about retaliation. ROA.195; ROA.203-06. As the EEO assistant,

Taylor testified that in April 2017 she not only knew how to report alleged

harassment in accordance with VA policies, but she also provided training

to other employees on the proper procedure to report harassment.

ROA.181-87.

Following that first alleged incident, Taylor then alleges that Hardy

"pressed his body up against" hers and said "[y]ou have very nice jugs."

ROA.206. Also in April 2017, Hardy sent Taylor a series of text messages

stating, among other things, "I ask to kiss your jugs that has not

happened," and "R [sic] u [sic] getting dressed for work . . . I guess you

have clothes on." ROA.250. As before, Plaintiff testified that she did not

report Hardy's conduct, despite possession of the written text messages, because she feared "facing reprisal," and because she believed Hardy would not be disciplined. ROA.202-04.

Between June and August 2017, Taylor testified that Hardy engaged in "bad management," and continued to make inappropriate comments, but she testified Hardy "wouldn't be as aggressive as it was before . . . . It wouldn't be direct contact like it was before." ROA.212-17. Taylor acknowledges she did not report any of Hardy's alleged conduct during this time, asserting she had no one to talk to. ROA.217-19.

### 2.    Taylor's allegations in September 2017

In September 2017, Hardy texted Plaintiff "[y]ou did not want me to go because you knew you would be a bad girl . . . . You may deny it but you know what probably would have happened . . . .  It is all good and may never happen . . . . I want it but you are so hesitant." ROA.254-55. Later that same month, Hardy texted Plaintiff saying, "I made you show a side you did not want to and I regret that . . . Crying and hurting you. The

last I want to do is hurt you. Just because I can't get what I want should not be a reason to be mean to you." ROA.258.

No other allegations of sexual harassment are made after the last September text message.   By the end of September, Taylor still had not reported any of the alleged harassment to the VA. ROA.223.

### 3.     Taylor first reports sexual harassment in October 2017 and is promptly moved away from alleged harasser

In October 2017, Taylor testified she and Hardy were not talking to one another. ROA.224.  By the middle of the month, Taylor stated Hardy approached her about moving out of EEO because they no longer communicated. ROA.266-67. In an email written contemporaneously with the events at the time, Taylor wrote she was agreeable to moving out of EEO and into a new position because of the unreported allegations of harassment. ROA.266-68.

Since then, however, Taylor has offered different versions about who she spoke to or what she said in October. For example, Taylor wrote in a contemporaneous email that she had not spoken to anyone about the harassment prior to her formally reporting it on October 30, 2017. ROA.268.

But in her deposition for her lawsuit, Taylor testified she met with her friend and coworker Kimberly Booker ("Booker") and Human Resources Manager Constance Ceasar ("Ceasar") on October 23, 2017, at a restaurant in Biloxi, Mississippi. ROA.225.  Taylor claims that she spoke about Hardy's conduct for the first time at the restaurant, although she testified "I did not verbally come out and say what had happened." ROA.225.

Notwithstanding those inconsistencies, it is undisputed that Taylor first submitted an informal, anonymous complaint of harassment on October 24, and submitted a formal complaint to the Office of Resolution Management ("ORM") on October 30. ROA.458-59.  It is also undisputed that Taylor was immediately moved from the EEO office one day after the complaint to ORM and Taylor was specially detailed to MAS. ROA.230-31. An investigation into Hardy was immediately launched. ROA.230-31. Even though Taylor alleges that she was made to return to the EEO office on November 3, 2017, she acknowledged that she did not see Hardy again after October 31, 2017, because he was away from the office at a training and she was detailed back to MAS before his return. ROA.230-31;

ROA.266-68. Taylor remained detailed at MAS until April 2018, applied for

a permanent position at MAS, and eventually moved to a higher-level role

in Tuscaloosa, Alabama. ROA.236-39. As a result of the VA's investigation,

Hardy resigned in lieu of termination. ROA.286-88.

As the district court noted, Taylor "testified that between March and

October 2017, she did not suffer any demotion, discipline, reduction in pay,

or change in benefits at work." ROA.586; ROA.233-34; ROA.238-39.

## SUMMARY OF THE ARGUMENT

The district court correctly found that Taylor's sexual harassment

claims from April to August 2017 are time-barred because she waited more

than 45 days from the incidents before reporting them. Taylor does not

dispute she missed the 45-day deadline.

Even if those claims were not time-barred, and even for Taylor's

timely presented allegations in September 2017, the district court correctly

determined that Taylor did not suffer a tangible employment action, that

the VA had reasonable anti-harassment measures in place to prevent and

protect from sexual harassment, and that Taylor knew how to take

advantage of those policies but failed to do so.  Indeed, as soon as Taylor reported the harassment, she was moved away from the alleged harasser the next day and an investigation ensued.

The district court properly granted summary judgment in favor of the VA.

## ARGUMENT

### The District Court Properly Granted Summary Judgment

### A.     Standard of Review

A district court's grant of summary judgment is reviewed *de novo*, applying the same standard as the district court and viewing the evidence "in the light most favorable to the non-moving party." *Doe v. Edgewood Ind. School Dist.*, 964 F.3d 351, 357 (5th Cir. 2020). "Summary judgment must be granted 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id*. at 357-58 (quoting Fed. R. Civ. P. 56(a)).

"Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not

adequately substitute for specific facts showing a genuine issue for trial."

*Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

Taylor presents three challenges to the district court's grant of summary judgment: (1) whether Taylor's claims from April to August are time-barred, (2) whether the court correctly determined Taylor did not suffer a tangible employment action, and (3) whether the VA had reasonable anti-harassment measures in place and Taylor failed to take advantage of them.[1]  In each instance, the district court expressly considered and rejected these arguments.

**B.    Discussion**

**1.    Taylor's claims from April to August 2017 are time-barred**

Before filing a sexual discrimination claim, "[a]ggrieved persons who believe they have been discriminated against on the basis of . . . sex . . . must consult a Counselor prior to filing a complaint in order to try to

---

[1] In her briefing, Taylor states four different issues on appeal, but issues Nos. 1 and 2 both challenge the district court's determination that she did not suffer a tangible employment action. As such, they are combined for discussion in this brief. Moreover, in this brief, Taylor's challenges are taken up in the order as ruled on by the district court for ease of reference.

informally resolve the matter," and they "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a).

In this case, there is no dispute that Taylor did not report any of her harassment allegations between April and August 2017 within 45 days of the alleged incidents. Taylor concedes this by acknowledging her first report was at the end of October. ROA.458-59. Waiting until October to report these claims was well after the 45-day requirement.

Furthermore, Taylor knew in April 2017 how to report sexual harassment per the VA's policies, and that she needed to do so within 45 days. ROA.181-87. As part of her duties in the EEO, she instructed other employees how to file such claims, and she acknowledged receipt of the VA policies about reporting sexual harassment with the 45-days requirement. ROA.181-87; ROA.290-387.  As she taught other employees, the 45-days requirement was a "firm" deadline. ROA.296.

On appeal, as before the district court, Taylor does not argue that the agency made a specific finding as to the timeliness of her claims when it

docketed her administrative claim. Instead, Taylor argues the VA waived the argument of untimeliness because the agency docketed and acted upon her claims at the administrative phase by awarding compensatory damages. [2] Appellant's Brief at 10. The district court considered and rejected this argument. ROA.581-83.

As the district court explained, contacting an EEO counselor within 45 days is a pre-suit requirement. *Baker v. McHugh*, 672 F. App'x 357, 361 (5th Cir. 2016) (citing *Green v. Brennan*, 578 U.S. 547, 551 (2016)). While non-jurisdictional, absent waiver, estoppel, or equitable tolling, a plaintiff's failure to contact an EEO counselor in a timely fashion bars her claims. *Pacheco v. Rice*, 966 F.2d 904, 905 (5th Cir. 1992). There was no specific finding as to the timeliness of Taylor's claims, nor has she cited to any such finding, or cited to any authority that acting on her claim waived the pre-suit requirement. The district court explained:

---

[2] At the administrative phase, Taylor was awarded $12,675.97 in compensatory damages and $79,312.50 in attorneys' fees. Taylor sought a *de novo* review of her claims by filing her lawsuit district court. Consistent with Fifth Circuit precedent, the VA filed a counterclaim for recoupment of the administrative awards. *See Massingill v. Nicholson*, 496 F.3d 382 (5th Cir. 2007).

[T]he law in this Circuit is clear that waiver of the forty-five-day requirement prescribed by 29 C.F.R. § 1614.105(a) requires more than agency action and investigation of an untimely complaint. *Reveles v. Napolitano*, 595 F. App'x 321, 325 (5th Cir. 2014). As the Court in *Reveles* explained, "***waiver requires a specific finding on the issue of timeliness," and "the docketing and acting on a complaint or request for reconsideration does not alone constitute a waiver of the timeliness objection."*** *Id.* at 325-26 (5th Cir. 2014) (finding that the timeliness argument was not waived where "the EEOC did not make a specific finding that Reveles's contact with an EEO counselor was timely"); *see also Werner v. Dep't of Homeland Sec.*, 441 F. App'x 246, 249 (5th Cir. 2011) (citing *Rowe v. Sullivan*, 967 F.2d 186, 191 (5th Cir. 1992) ("In order to waive a timeliness objection, the agency must make a specific finding that the claimant's submission was timely.")).

ROA.582 (emphasis added).

While Taylor argues that the administrative award itself constituted a waiver, she cites no authority for this argument, nor does she explain why awarding damages is not the same as "acting on a complaint," which this Court has specifically held does not constitute waiver. *Reveles*, 595 F. App'x at 325.

Because Taylor first contacted ORM on October 24, 2017 (the earliest anonymous report), the only two incidents that occurred within 45 days of those reports are the two text messages from Hardy on September 10, 2017,

and September 20, 2017.  All of Taylor's other claims are outside of the 45-

day requirement and are time-barred.

> **2.    The District Court correctly determined Taylor did not suffer a tangible employment action and, as a result, analyzed her claim as one of hostile work environment**

All of Taylor's claims[3] involve allegations of harassment by a

supervisor. Consequently, the district court correctly examined her claims

in the context of *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), and

*Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998) (collectively,

"*Ellerth/Faragher*"), two cases that govern analysis for alleged supervisor

harassment.

In *Ellerth/Faragher*, the Supreme Court held that an employer may

escape liability for a supervisory employee's conduct if (1) the employer

exercised reasonable care to prevent and promptly correct any sexually

---

[3] Notwithstanding that the district court found Taylor's claim from April to August 2017 are time-barred, as noted above, she still presented two timely instances of alleged harassment from her supervisor in September 2017. The only alleged tangible employment action stemming from *any* of Taylor's claims is the transfer to MAS in October 2017. As a result, even if Taylor's claims from April to August 2017 are not time-barred, they still were properly dismissed because Taylor did not suffer a tangible employment action and she unreasonably failed to take advantage of the anti-harassment measures at the VA, as discussed in this brief.

harassing behavior, and (2) the employee unreasonably failed to take advantage of preventive or corrective opportunities provided by the employer or to otherwise avoid harm. *See Faragher*, 524 U.S. at 807; *Ellerth*, 524 U.S. at 764-65.

In applying this analysis, a court must first determine if the employee suffered a tangible employment action. *Casiano v. AT&T Corp*., 213 F.3d 278, 283-84 (5th Cir. 2000). If there is a tangible employment action, then the case is classified as a *quid pro quo* case, and the *Ellerth/Faragher* defense is unavailable. *Id*. If there is *no* tangible employment action, the Court examines the claim as one for a hostile environment and determines if "the actions ascribed to the supervisor by the employee constitute severe or pervasive sexual harassment." *Id*. at 285.

If it is determined that there was severe or pervasive sexual harassment rising to the level of a hostile work environment, the employer is vicariously liable unless it can prove both prongs of the *Ellerth/Faragher* defense: (1) that the employer exercised reasonable care to prevent and correct promptly any such sexual harassment; and (2) that the employee

unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer to avoid the harm otherwise. *Id.*

Taylor alleges she suffered a tangible employment action when she transferred to MAS on October 31, 2017, one day after reporting Hardy's alleged harassment. The district court correctly rejected this argument.

In *Ellerth*, the Supreme Court defined a tangible employment action as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth,* 524 U.S. at 761. "[I}n most cases, a tangible employment action inflicts ***direct economic harm***." *Davenport v. Edward D. Jones & Co., L.P.*, 891 F.3d 162, 170 (5th Cir. 2018) (citing *Ellerth*, 524 U.S. at 761-62) (emphasis added) (internal quotations omitted)). Moreover, as the district court explained, there is no tangible employment action when a manager other than the alleged harasser authorizes the transfer that is subject of dispute. *See Harper v. City of Jackson Mun. Sch. Dist.*, 149 F. App'x 295, 299 (5th Cir. 2005) (finding no tangible employment action where an employee was transferred to another

school district by a new principal, not the alleged harasser, and there was

no evidence linking the alleged harasser to the transfer); *Casiano,* 213 F.3d

at 284-85 (finding no tangible employment action where an employee was

denied access to a training program because another manager, not the

alleged harasser, made the decision).

> **a.     Taylor requested transfer to MAS, and the transfer was approved by another supervisor, not the alleged harasser**

Taylor does not dispute she requested the transfer to MAS.  Taylor

does not dispute the transfer was authorized by Ceasar, not the alleged

harasser, Hardy. Taylor does not dispute that once she transferred, Hardy

insisted Taylor report back to EEO because he did not want her transferred

to MAS. Taylor also does not dispute she suffered no loss in pay, loss of

benefits, or any discipline as a result of the transfer.  Furthermore, Taylor

does not dispute she applied to work in the MAS position permanently.

 Instead, Taylor argues that because she alleged Hardy requested a

list of potential other jobs for Taylor before her requested transfer, then that

establishes a "causal" connection to Hardy. Appellant's Brief at 16. Taylor

cites no case law to support this theory, nor does she explain what the "causal" connection is since Taylor herself requested the transfer and another supervisor approved it. Further, Taylor fails to reconcile her claims that Hardy allegedly threatened to "AWOL" her if she did not return to EEO after the transfer. ROA.463-64.  It is wholly incompatible to assert Hardy made her transfer to MAS and at the same time Hardy threatened to AWOL her if she did transfer. Nor is it consistent with Taylor's own declaration that she provided in response to the motion for summary judgment in which she testified: "*I contacted* Ms. Ceasar again to inquire *about my moving* out of EEO," and "On Oct. 30, 2017, *I emailed* Ms. Ceasar *again requesting* a move" because of the alleged harassment, and Taylor also confirms Ceasar detailed Taylor to MAS, not Hardy. ROA.492-493 (emphasis added).

The district court thoroughly considered and rejected Taylor's unsupported and inconsistent "causal" connection theory.

### b. Taylor offers only conclusory assertions she transferred from a position that was "objectively superior"

Next, Taylor argues that her work as EEO assistant was "objectively superior" to the MAS position. Appellant's Brief at 17. But, as noted above, Taylor does not dispute that she incurred no loss of pay in requesting and receiving the transfer, she lost no benefits, she was not demoted, and she preferred the MAS position enough that she applied to work in that same MAS position permanently. In challenging the district court's opinion, Taylor again offers only conclusory assertions about feeling less prestige in working in the MAS role. As the district court found: "Taylor ***did not present any evidence*** 'that the prior position [in EEO] was objectively superior so that . . . reassignment [to MAS] could be considered a demotion.'" ROA.586 (emphasis added). *See Alaniz v. Zamora-Quezada*, 591 F.3d 761, 772 (5th Cir. 2009); *Oliver,* 276 F.3d at 744 ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial.").

On appeal, Taylor again fails to present evidence of objective

superiority. The district court correctly rejected this argument.

### c.   Alleged threats with no action do not create a tangible employment action

Last, to the extent Taylor suggests that Hardy's alleged threats to

"AWOL" her constituted a tangible employment action, the district court

rejected this argument as well. "[T]hreats of termination, in the absence of

termination in fact, are insufficient to establish a tangible employment

action." ROA.587; *see also Ross v. Wald Moving and Storage Servs., Inc.*, 193

F.3d 516 (5th Cir. 1999) (threats alone not tied to an actual tangible

employment action are insufficient to establish *quid pro quo* liability). There

is no dispute Taylor was not reported as AWOL. She did not receive a pay

cut, was not terminated, or suspended, or disciplined in any way. Even

taking as true her allegation there was a threat to AWOL, nothing occurred.

In short, in challenging the district court's determination, Taylor has

offered no economic harm, no objective superiority of one position over

another, no loss of benefits, no discipline, no suspension, and nothing but

conclusory assertions about a position in MAS that she applied to work in

permanently. The district court correctly found Taylor did not suffer a

tangible employment action.

### 3. The VA had reasonable safeguards in place and Taylor was moved away from alleged harasser as soon as she reported claims

As set forth above, because Taylor did not suffer a tangible

employment action, the district court's analysis turned to a claim of hostile

environment. For purposes of summary judgment, the district court

assumed Taylor presented sufficient evidence of a hostile environment.

Thus, the district court examined whether the VA was entitled to the

*Ellerth/Faragher* defense.

### a. The VA took reasonable care to follow its anti-harassment policies

First, there is no dispute that the VA has robust anti-harassment

policies in place and that Taylor knew those policies and how to report

harassment. ROA.181-87; ROA.290-387. On appeal, however, Taylor argues

that "[n]o one in the reporting chain knew how to address a sexual

harassment complaint against William Hardy, the VISN lead of EEO."

Appellant's Brief at 23. Taylor also references a statement by VA Director

Mike Saslo, who stated Taylor was in a "vulnerable" position given Hardy's alleged conduct. Appellant's Brief at 9; ROA.529.

Yet, as the district court found, Taylor's assertions are belied by the record. Taylor cites no support for the baseless assertion that the VA did not act promptly to handle her complaint once she finally reported it. The undisputed evidence establishes Taylor was moved away from the alleged harasser the very next day after she reported him to ORM. ROA.230-31; ROA.266-68. Taylor did not see the alleged harasser again after she reported her allegations. ROA.230-21; ROA.266-68.  The alleged harasser, Hardy, was quickly investigated and soon resigned in lieu of termination from the VA. ROA.286-88.

As the district court found, even construing Taylor's inconsistent testimony that she actually reported harassment to Ceasar at a dinner meeting on October 23 (earlier than the October 30 ORM report), Taylor was moved away from Hardy only seven days after that conversation, which is still prompt remedial action by the employer. *See, e.g., Frazer v. Angelina Coll.*, 67 F. App'x 251, 2003 WL 21195492 (5th Cir. 2003) (holding

defendant's investigation and subsequent action one week after employee's complaint as constituting the exercise of reasonable care); *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 266 (5th Cir. 1999) (holding a company's response one month after an employee's complaint to be "prompt").

The district court correctly found the VA met the first prong of the *Ellerth/Faragher* defense.

> **b.    Taylor unreasonably failed to take advantage of the corrective measures available at the VA to prevent harassment**

Second, the district court examined whether Taylor unreasonably failed to take advantage of preventative or corrective opportunities provided by the VA. Taylor does not dispute she knew how to report alleged harassment as early as April 2017 and that she delayed more than six months in reporting her allegations.

To account for her delay, Taylor asserts that she feared retaliation if she reported the allegations sooner, an argument the district court also considered and rejected. On appeal, Taylor argues she has "first-hand knowledge" of the alleged fear, but, as with the district court, she points to

nothing more than generalizations and unfounded speculation that is

wholly inconsistent with what happened once she did report the

allegations: the VA moved Taylor away from Hardy, the VA opened an

investigation into the alleged conduct, and Hardy ultimately retired in lieu

of termination because of the VA's swift investigation.

Case law has established that generalized, vague assertions of fear of

retaliation in reporting harassment are insufficient to prevent the

application of the *Ellerth/Faragher* defense:

> All harassment victims risk retaliation when they complain. For
> Title VII to be properly facilitated, the reasons for not
> complaining about harassment should be substantial and based
> upon objective evidence that some significant retaliation will
> take place. For example, a plaintiff may bring forward evidence
> of prior unresponsive action by the company or management to
> actual complaints. Here, there was no evidence that [the
> employer] had ever taken any adverse tangible employment
> action against complaining employees....

*Harper*, 149 F. App'x at 302.  Like *Harper*, there is no "substantial…objective

evidence" presented in support of Taylor's alleged fear of retaliation.

Conclusory assertions are insufficient.  The district court correctly found

Taylor unreasonably failed to take advantage of the anti-harassment measures in place.

For these reasons, the VA was entitled to assert the *Ellerth*/*Faragher* defense. The district court properly granted summary judgment in favor of the VA.

## CONCLUSION

Taylor's claims from April to August 2017 are time-barred. Even if they were not, and even for her claims from September 2017, Taylor unreasonably failed to take advantage of the anti-harassment protections at the VA, protections she both knew how to follow and also instructed other employees how to report harassment. As soon as Taylor filed her complaint, the VA promptly removed her from contact with Hardy, swiftly investigated the allegations, and ultimately Hardy resigned in lieu of termination.

The district court correctly determined summary judgment was appropriate and Taylor's claims should be dismissed.  The VA respectfully requests this Court affirm the district court's decision.

Respectfully submitted,

DARREN J. LaMARCA
*United States Attorney*

By:  */s/ Gregg Mayer*
GREGG MAYER
Mississippi Bar No. 102232
*Assistant United States Attorney*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this day, he caused to be electronically filed a copy of the Brief for Appellee with the Clerk of the Court using the ECF system, which caused the brief to be served on counsel of record.

SO CERTIFIED, this the 8th day of August, 2023

By:   /s/ Gregg Mayer
      **Gregg Mayer**
      *Assistant United States Attorney*

# CERTIFICATE OF COMPLIANCE

1.   This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(f) because it contains 4,551 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type requirements of Fed. R. App. P. 32(a)(6) because it has been prepared using Palatino Linotype, in 14-point font produced by *Microsoft Office WORD 2016* software; the footnotes are in 12-point type.

3.   Privacy redactions required by Fifth Cir. R. 25.2.13 have been made to this brief.

4.   The electronic submission of this brief is an exact copy of the paper document as required by Fifth Cir. R. 25.2.1.

5.   This brief has been scanned for viruses with the most recent version of commercial virus scanning program and is free from viruses.

Date:  August 8, 2023

*/s/ Gregg Mayer*
**GREGG MAYER**
Assistant United States Attorney